IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Caroline McCullough | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| Wellspan York Hospital | ) |
| Tanya Haugh, Individual | ) |
| | ) |
| | ) |
| Defendants. | ) |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Caroline McCullough (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendants and in support of such Complaint avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under the Family Medical Leave Act, 29 U.S.C. §2601 *et seq* (hereinafter "FMLA") and the Rehabilitation Act of 1973 Section 504 (hereinafter, "Rehab Act"). Moreover, the Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff brings this action against her former employer, Wellspan York Hospital, (hereinafter "York Hospital").

4. York Hospital is a federally funded entity receiving grants and subsidies from the federal government since it and its subsidiaries are federally qualified health centers. Additionally, it receives federal funding for its research projects and nationally recognized nursing programs conducted in its facilities.

5. York Hospital is located at 1001 South George Street York, PA 17403.

6. Plaintiff alleges, *inter alia*, that she was discriminated against and/or retaliated against based on the exercise of her FMLA and/or attempt to exercise those rights, that the applicable Defendants unlawfully interfered with, restrained, and/or denied and retaliated against Plaintiff due to her exercise of FMLA and/or attempt to exercise those rights, including but not limited to the discharge of Plaintiff's employment.

7. Plaintiff is an adult female who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was employed by York Hospital.

8. Defendant Tanya Haugh (hereinafter "Defendant Haugh") is a direct supervisor/manager with York Hospital and resides in the Commonwealth of Pennsylvania, York County.

9. At all relevant times hereto, Defendant Haugh was employed by York Hospital as a direct supervisor/manager of the Plaintiff and had supervisory duties over the Plaintiff and served in the successive chain of command relative to her. Thus, Defendant Haugh was an employer within the meaning of the FMLA.

10. York Hospital is a 580-bed community teaching hospital in York County, Pennsylvania located at 1001 South George Street York, PA 17403.

## UNDERLYING FACTS

11. Plaintiff commenced employment with York Hospital on January 5, 1998.

12. At the time of termination, Plaintiff served as a Case Manager Registered Nurse.

13. In her capacity as Case Manager Registered Nurse, Plaintiff reported directly to, Defendant Haugh.

14. Plaintiff has a daughter with serious health conditions including anorexia, anxiety and depression.

15. In or about October 2018, Plaintiff called off work 2 times due to her daughter's serious health conditions.

16. Plaintiff later called off work November 8, 2018, due to her daughter being hospitalized for those same serious health conditions.

3

17. Thereafter, Defendant Haugh held a counseling meeting on November 14, 2018 with the Plaintiff to address her concerns about Plaintiff's attendance and tardiness. During the meeting, Plaintiff advised Defendant Haugh of her daughter's severe illness and the effect it was having on the Plaintiff's own emotional health.

18. Defendant Haugh told the Plaintiff that if she needed to take leave for any reason, she could contact York Hospital's lave administrator, "Well-Advised" and request leave under the FMLA.

19. The Defendant also employs a full-time ADA Coordinator to work with employees who need a reasonable accommodation under the Americans with Disabilities Act (ADA).

20. Once FMLA leave is approved through Well Advised, employees have a 72 hour window to report any FMLA or ADA related absences to Well Advised.

21. However, at no time did Defendants ever engage the Plaintiff in any interaction with their ADA Coordinator about workplace accommodations for Plaintiff's own medical condition(s).

22. Furthermore, at no time did the Defendants' ADA Coordinator discuss a referral for excessive absences as per its policy #900 Definitions: III. E. Well Advised which states in 1: "In some cases of excessive absenteeism, it may be appropriate to refer the employee to Well Advised for evaluation and possible referral."

23. Once more, in Definitions III E. 2 it states in pertinent part: In the case of serious, chronic illness, the supervisor, manager, or director may choose to work with Well Advised and the employee to develop a work schedule for the mutual benefit of the Department and the employee.

24. Further, York Hospital policy is that absences reported to Well Advised that are designated as leave under the FMLA or as a reasonable accommodation under the ADA, are not counted against employees in the progressive disciplinary process.

25. However, one again, neither the Defendants nor Well Advised at any time interacted with the Plaintiff about a reasonable accommodation for her own serious health conditions(s).

26. Notwithstanding Defendant Haugh's advising the Plaintiff to call Well Advised for FMLA for her daughter, Defendant Haugh in the same meeting informed Plaintiff that she was going to give her a written warning for absences and tardiness which were directly related to absences and tardiness related to her daughter's serious medical conditions. However, Plaintiff was told by Defendant Haugh that the signing of the disciplinary paperwork for the medical related absences of her daughter was just a formality until the FMLA paperwork was filled out.

27. Plaintiff called Well Advised and informed them of her daughter's illness and her need to call off work 2 times (in September and October) and her daughter's time in the hospital on November 8-9, 2018. Well Advised told her that she was to give paperwork to her physician and return it to them, however, did not advise her as to when it should be back dated.

28. Plaintiff's daughter's physician nonetheless signed and dated the Plaintiff's intermittent FMLA paperwork request on December 5, 2018 specifically adding dates for November 8, 2018, November 9, 2018, December 3, 2018 and December 4, 2018.

29. The Plaintiff's daughter's physician also specified that the FMLA leave would start on November 8, 2018 and end on February 8, 2019 with an explanation that the leave would be needed intermittently for 1-2 days off per week or 1-2 afternoons per week with up to 2 hours if appointments can be consecutive.

30. However, Plaintiff was unaware of her rights to additional leave time past the date of February 8, 2019 as she was not given notice of that right by the Defendants.

31. On January 2, 2019, Plaintiff was disciplined yet again for absences and lateness due in large part to FMLA qualified issues or for issues related to her own health conditions. In fact, the Defendants' after being informed of Plaintiff health conditions and need for accommodations, located the Plaintiff sleeping in her car

or at her work station due to the sheer exhaustion and anxiety she was experiencing from taking care of her seriously ill daughter.

32. Yet, again, the defendants' failed to make a referral to Well Advised as per its policies for excessive absences when related to chronic health conditions.

33. Furthermore, while Plaintiff did make contact with the Defendants regarding the FMLA nature of her absences, she was disciplined any way since she was told by the Defendants that her contact with them was not sufficient to report FMLA leave but she needed to go through the third party Well Advised at all times.

34. For example, in or about January 2019, Plaintiff called Well Advised to inform them of the need for a 4-hour absence due to her daughter's doctor's appointments. Unfortunately, the Plaintiff's daughter needed an EKG, blood work and several other tests which would take the rest of the day, so the Plaintiff called her Supervisor to let her know that she would not be coming in the rest of the day.

35. The next day, Plaintiff's Supervisor informed Plaintiff that since she did not call Well Advised of her need to call in the rest of the day, it would constitute a second written warning.

36. However, other employees have communicated directly with Defendant Haugh regarding medical leave without discipline.

37. Furthermore, in March and April 2019, Plaintiff took a few scheduled (excused) days off to tend to her daughters' medical needs. Defendant Haugh then suggested that the Plaintiff contact Well Advised and ask to have the FMLA paperwork backdated to March 2019 for missed days related to her daughter's illness.

38. The provider from Penn State Health placed a date of 12-3-2018 as the date she examined the patient with instructions for new leave dates. However, no one from Well Advised or the Defendant Hospital contacted the Plaintiff's daughter's provider to discuss the March and April FMLA related absences.

39. Critically, the provider indicated the leave date and estimated end dates would be from 5-1-2019 to 5-1-2020.

40. On June 5, 2019, Plaintiff's daughter was threatening to harm herself and Plaintiff did not have anyone else to care for her.  In distress, the Plaintiff called Defendant Haugh and explained the circumstances stating that her daughter had a medical emergency, so she needed to call off work. Thereafter, on or about June 10, 2019, Plaintiff received notice that the June 5, 2019 absence was considered an unexcused absence although it was an emergency situation.

41. Thereafter, Plaintiff emailed Well Advised to inform them that her daughter required medical attention on June 5, 2019. However, Well Advised stated that

her unexcused absence would require her Supervisor to change it to an excused absence at that point due to being over the 72-hour threshold.

42. Defendant Haugh had the authority to change the unexcused to an excused absence. So, Plaintiff attempted to communicate with Defendant Haugh via email asking her to change the absence to an excused absence since she did call and inform her of the medical emergency for her daughter on June 5, 2019.

43. Notwithstanding, on June 17, 2019, Plaintiff received her third and final warning for not calling Well Advised and Plaintiff was terminated.

44. Plaintiff has timely filed a formal charge of discrimination with the Equal Employment Opportunity Commission [hereinafter "EEOC"] which was dual filed with the Pennsylvania Human Relations Commission [hereinafter referred to as "PHRC"] and such actions are docketed as 530-2019-05630.

45. The Defendant is liable for the actions of its agents under a theory of *Respondeat Superior.*

## COUNT 1
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE

46. Plaintiff incorporates herein the previous averments as if fully set forth.

47. Plaintiff's daughter's medical conditions constitute a "serious health condition" as that term is defined under and pursuant to the FMLA.

48. Defendants were provided with sufficient information to reasonably verify that Plaintiff's daughter required treatment by a health care provider for her serious health conditions.

49. At all relevant times hereto, Plaintiff had been employed by Defendant for at least 12 months and had been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the time period in which she should have been granted FMLA.

50. At all relevant times hereto, Defendant employed 50 or more employees within 75 miles of Plaintiff's worksite for a period of 20 or more calendar work weeks.

51. Accordingly, at all time's material to this Complaint, named Defendants were a "covered employer" within the meaning of the FMLA.

52. At all times material to this Complaint, Plaintiff was an "eligible employee" within the meaning of the FMLA.

53. Plaintiff's daughter's medical leaves of absence in 2018 and 2019 were protected absences under and pursuant to the FMLA and regulations promulgated thereunder. Instead, Defendants and its/their agents, disciplined Plaintiff after she sought medical leave for her daughter.

54. Defendants were required to communicate with Plaintiff regarding her rights under FMLA, including but not limited to the provision of an individualized notice to employee regarding FMLA rights and obligations.

55. On or about November 8, 2018, Plaintiff provided proper notice of her need for FMLA leave to receive future treatments on account of her daughter's serious medical condition.

56. Defendants failed to provide Plaintiff her entitled FMLA leave of absence, or intermittent leave, when her daughter required continuing treatment and rehabilitation. Instead, Defendants harassed Plaintiff by repeatedly disciplining her during times in which she was seeking treatment for her daughter's serious health conditions.

57. Defendants possessed no good faith legitimate basis for its actions.

58. Defendants interfered with Plaintiff's rights under the FMLA and/or discriminated against her as a result of her request for FMLA leave and/or the attempt to use FMLA leave.

59. The prevention of Plaintiff's use of FMLA leave in 2018 and 2019, and the unjustified discipline of the Plaintiff once she sought FMLA protections constitutes interference with her rights under the law.

60. As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefore.

61. Plaintiff is further entitled to recover her attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefore.

**WHEREFORE**, Plaintiff demands damages for the Defendants' actions including:

- Economic and/or Actual damages;
- Liquidated as applicable;
- Reasonable attorney's fees, expert fees and costs of suit
- Any other relief that this Court deems just and equitable.

## COUNT 2
## FAMILY AND MEDICAL LEAVE ACT RETALIATION

62. Plaintiff incorporates herein the previous averments as if fully set forth h.

63. In 2018 and 2019, Plaintiff exercised her rights or attempted to exercise her rights under the FMLA.

64. The FMLA and regulations promulgated thereunder prevent an employer from discriminating against employees who have exercised rights and/or taken FMLA leave. 29 U.S.C. §2615(a) (2); 29 C.F.R. §825.220(c).

65. Defendants willfully violated the FMLA and regulations promulgated thereunder in that they disciplined, discriminated, and/or retaliated against the Plaintiff as a result of her use of FMLA leave, or attempt to use FMLA leave.

66. Defendants willfully violated Section 29 U.S.C. §2615(a)(2) in that they discharged, discriminated and/or retaliated against Plaintiff as a result of her use of FMLA leave, or attempt to use FMLA leave, as more fully set forth above.

67. Defendants' acts and omissions, and conduct as more fully described above, were knowing and willful.

68. Defendants' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis thereby rendering Defendants' liable for liquidated damages pursuant to the FMLA, and claim is made therefore.

69. As a result of Defendants' violation of the FMLA, as more fully described above, Plaintiff is entitled to back pay, front pay wages together with interest thereon pursuant to the FMLA, and claim is made therefore.

70. Plaintiff is further entitled to recover her attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefore.

71. The discharge of Plaintiff's employment effective on or about June 17, 2019 constitutes an adverse employment action.

**WHEREFORE**, Plaintiff demands damages for the Defendants' actions including:

- Economic and/or Actual damages;
- Liquidated as applicable;
- Reasonable attorney's fees, expert fees and costs of suit
- Any other relief that this Court deems just and equitable.

**COUNT 3**
**VIOLATION OF THE REHABILITATION ACT**
**(FAMILIAL/ASSOCIATION PROVISION)**
**Plaintiff v York Hospital**

72. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

73. The Rehabilitation Act prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace and/or have an association with another's disability.

74. Plaintiff's daughter has impairments which substantially limit one or more major life activities: anorexia, anxiety and depression. Further, Defendant was aware of the Plaintiff's daughter's disabilities and Defendants regarded Plaintiff's daughter as having a disability.

75. Defendants discriminated against Plaintiff when it terminated Plaintiff's employment based on its assumptions regarding future absences related to her daughter's care.

**WHEREFORE**, Plaintiff seeks all appropriate relief under and pursuant to the Rehab Act as more fully outlined below in its ad damnum clause.

**COUNT 4**
**REHABILITATION ACT DISCRIMINATION**
**Plaintiff v York Hospital**

76. Plaintiff incorporates herein the previous averments as if fully set forth.

77. Plaintiff has anxiety and depression.

14

78. The Rehabilitation Act prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

79. Plaintiff's requests for an accommodation in the workplace (accommodations due to her anxiety regarding her daughter's serious health condition) constitute "protected activity" pursuant to state and federal law.

80. York Hospital discriminated against the Plaintiff on account of her protected activity.

81. The Plaintiff believes and therefore avers that York Hospital's purported basis to discipline her (e.g. that she was missing work for unjustified reasons) is false and erroneous.

82. As a result of all of the above, the plaintiff avers that the York Hospital discriminated against her on account of her protected activity by imposing disciplinary measures after she gave notice of her need for workplace accommodations (accommodations for her anxiety and depression due to her daughter's serious health condition).

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and any other applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

## COUNT 5
## REHABILITATION ACT
## HOSTILE WORK ENVIRONMENT
### Plaintiff v York Hospital

83. Plaintiff incorporates herein the previous averments as if fully set forth.

84. The Plaintiff avers that she is a qualified individual with a disability under the Rehab Act due to her anxiety and depression and York Hospital's notice of the same.

85. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

86. The Plaintiff was subject to unwelcomed harassment after seeking accommodations for her anxiety and depression due to her FMLA Intermittent Leave requests for her daughter's serious health conditions.

87. Further, Plaintiff was subjected to further humiliation and harassment when hospital officials failed to correct or remedy the ongoing harassment by York Hospital officials after its knowledge of the same.

88. Further, Plaintiff was subjected to a hostile work environment because she has been repeatedly mistreated when agents of York Hospital intentionally, negatively, and callously communicate within the school about the plaintiff's health issues and alleged negative performance.

89. The harassment was based on Plaintiff's disability because she received harsh discipline after she mentioned her anxiety and emotional distress due to her daughter's serious health condition(s).

90. Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

91. York Hospital knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, and further disciplining and berating her due to her conditions.

92. The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability against York Hospital for her claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and all applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the plaintiff, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs.

## COUNT 6
## REHABILITATION ACT RETALIATION
### Plaintiff v York Hospital

93. Plaintiff incorporates herein the previous averments as if fully set forth.

94. The Rehabilitation Act prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

95. The Plaintiff's request for accommodations in the workplace constitutes "protected activity" pursuant to state and federal law.

96. York Hospital retaliated against the Plaintiff on account of her protected activity.

97. The Plaintiff avers that York Hospital's purported basis to discipline her (e.g. that she was missing work for unjustified reasons) is false and erroneous.

98. As a result of all of the above, the Plaintiff avers that York Hospital retaliated against her on account of her protected activity by imposing illegitimate disciplinary measures after its notice of her need for workplace accommodations.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and any other applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the Plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

## COUNT 7
## PENNSYLVANIA COMMON LAW CLAIM
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

99. Plaintiff incorporates all forgoing paragraphs as if fully set forth herein.

100. Plaintiff has suffered irreparable severe and emotional distress and harm by the intentional and/or reckless conduct of the Defendants.

101. The Defendants expressed extreme and outrageous conduct towards the Plaintiff at a time when she was in great distress and pain regarding her daughter's serious health conditions.

102. The Defendants showed utter disregard for Plaintiff's frail condition, intentionally and/or recklessly demeaning the Plaintiff by its actions and conduct.

103. The Defendants' outrageous conduct, as more fully described above, evidenced extreme disregard for Plaintiff's daughter's medical condition and caused the Plaintiff humiliation during severe and disabling physical and mental health conditions regarding her daughter's condition in a manner that disrupted her treatment plan and caused severe emotional distress by adding insult to injury and the burden of an unjustified discipline and termination after her requests for medical leave for her daughter's serious health conditions.

104. The Defendants' actions, as more fully set forth above, were extreme and outrageous.

105.   As a direct and proximate result of the Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, including but not limited to complications of, and exacerbations of her mental and physical health conditions including anxiety and depression.

106.   As a direct and proximate result of the Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, which resulted in symptoms including but not limited to feelings of fright, shock, humiliation, severe anxiety, outrage, guilt, depression, panic, and diminished self-esteem.

107.   As a direct and proximate result of the emotional distress, as more fully set forth above, Plaintiff sustained bodily harm, including but not limited to shortness of breath, gastrointestinal upset, increased heart rate with palpitations, insomnia, severe anxiety, and the exacerbation and deterioration of her physical mental health conditions and prior treatments.

108.   Plaintiff required, sought and received medical treatment, including mental health counseling for the aforesaid emotional distress and resulting injuries.

109.   As a direct and proximate result of said injuries, Plaintiff has endured pain and suffering, great mental anguish, and will endure additional pain and suffering in the future, and claim is made therefor.

110.   As a direct and proximate result of said injuries, Plaintiff has suffered a loss of life's pleasures and enjoyment and claim is made therefor.

111.   As a direct and proximate result of said injuries, Plaintiff has suffered great humiliation and embarrassment, and claim is made therefor.

112.   As a direct and proximate result of said injuries, Plaintiff has incurred liability for medical expenses, psychiatric/psychological counseling expenses, and will incur such expenses in the future, and claim is made therefor.

113.   The actions of the Defendants, as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and wellbeing of Plaintiff and which were undertaken with the direct intent to harm Plaintiff, and/or callous disregard for Plaintiff's wellbeing, thereby warranting the imposition of punitive damages and claim is made therefor.

**WHEREFORE,** Plaintiff requests this Honorable Court to enter judgment in her favor and against the Defendants for Actual and Compensatory damages; Punitive damages and any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant her relief as specified below.

114.   The Plaintiff prays that the Court award monetary relief as follows:

a. Order Defendant York Hospital to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under her claims under the Rehab Act;

b. Order Defendants to pay equitable monetary relief and liquidated damages under the FMLA; and

c. Order Defendants to pay equitable monetary relief, compensatory and punitive damages to the Plaintiff's claims on the claim of Intentional Infliction of Emotional Distress in an amount to be proven at trial.

115.   The Plaintiff further prays that the Court award her other costs, expenses and attorneys' fees, payable by Defendant York Hospital by determining that the Plaintiff is a prevailing party on her Causes of Action (FMLA and Rehab Act), and awarding the Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action.

116.   The Plaintiff prays that the Court order York Hospital to pay pre- and post-judgment interest in all monetary amounts awarded in this action under the (FMLA and the Rehab Act), as provided by law.

117.   The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that Defendant York Hospital has fully complied with the remedies requested.

118.   The Plaintiff prays that the Court award such other and further relief as this

Court deems equitable and just.

Dated: June 17, 2020                    Respectfully Submitted,

                                        DONHAM LAW

                                        By: */s/ Jeremy A. Donham*
                                        Jeremy A. Donham, Esquire
                                        Attorney for Plaintiff
                                        Supreme Ct. I.D. #206980
                                        P.O. Box 487, Dellslow, WV 26531
                                        P: (717) 881.7855 F: (888) 370.5177
                                        E-mail: donhamlaw@comcast.net